IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DIANNE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 02-PT-1579-E |
| ) | |
| AMERICAN HOME PRODUCTS ) | |
| CORPORATION, et al. ) | |
| ) | |
| Defendants. ) | |

**FILED**
SEP 17 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

**ENTERED**
SEP 17 2002

## MEMORANDUM OPINION

This cause comes to be heard upon plaintiff Dianne Smith's Motion to Remand filed on July 11, 2002.

### FACTS AND PROCEDURAL HISTORY

Plaintiff Dianne Smith ("Smith") is a resident of Calhoun County, Alabama. Defendant American Home Products Corporation ("American Home")[1] is incorporated under the laws of the State of Delaware, and has its principal place of business in the State of New Jersey. Defendant Gate Pharmaceuticals ("Gate"), a Division of Teva Pharmaceuticals USA, is incorporated under the laws of the State of Delaware, and has its principal place of business in Pennsylvania. Defendant Dr. John Sherrer ("Sherrer") is a resident of Calhoun County, Alabama.

Smith filed a products liability suit in the Circuit Court of Calhoun County, Alabama, alleging that the diet drugs Pondimin and Adipex were responsible for her severe heart disease.

---

[1] American Home is the successor in interest to A.H. Robins Co., Inc. As of March 11, 2002, American Home changed its name to Wyeth. *See* Notice of Removal at 1-3. As American Home is the captioned defendant in this case, the court will continue to refer to Wyeth as American Home.

Pondimin is manufactured by American Home, while Adipex is manufactured by Gate. In addition, Smith sued Sherrer for malpractice, alleging that he breached his duty of care to Smith by prescribing the two drugs to her. Sherrer prescribed the two drugs in combination to Smith on April 7, 1997, May 9, 1997, and on June 18, 1997. Adipex alone was prescribed on August 4, 1997, November 17, 1998, January 18, 2000, and February 23, 2000. Smith alleges that she did not discover her injuries from her use of these drugs until a November 9, 2001 echocardiogram.

Smith's suit was filed on May 8, 2002. On May 29, 2002, Defendants American Home and Sherrer were served with the summons and complaint.[2] In accordance with 28 U.S.C. §§ 1441 & 1446, Defendant American Home filed a notice of removal to this court within thirty days after receipt by the first-served defendant through service of process of the initial pleading setting forth the claims for relief upon which this action or proceeding is based.[3] Defendant American Home asserts that this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendants Gate and Sherrer did not join in the notice of removal.[4]

## MOTION TO REMAND STANDARD

Federal courts are courts of limited jurisdiction. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (1994). Therefore, federal courts only have power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The limited nature of federal court jurisdiction has caused the Eleventh Circuit to favor remand of removed cases where

---

[2] Defendant Gate was served on May 31, 2002.

[3] Defendant American Home filed the notice of removal on June 27, 2002.

[4] As will be discussed below, American Home alleges that Gate and Sherrer need not consent and/or join in the removal because they were fraudulently joined in the action.

federal jurisdiction is not absolutely clear. *Burns*, 31 F.3d at 1095. The removal statute is to be construed narrowly with doubt construed against removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941).

A case may be removed from state to federal court only if the case could have been brought originally in federal court. *See* 28 U.S.C. § 1441(a). The burden of establishing federal jurisdiction is placed on the removing party, with all doubts resolved in favor of remand. *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). A state court action may be removed to federal court based upon diversity or federal question jurisdiction. *See* 28 U.S.C. § 1441(a), (b). However, diversity will not support removal jurisdiction if any properly joined defendants are citizens of the state in which the suit was originally filed. *See id.* Moreover, "courts have interpreted 28 U.S.C. § 1446(b) to require *all* served defendants to join in the removal." *Miles v. Kilgore*, 928 F. Supp. 1071, 1075 (N.D. Ala. 1996) (citations omitted) (emphasis added).

## ARGUMENTS

Smith argues that this civil action is due to be remanded to the Circuit Court of Calhoun County, Alabama, because this court lacks jurisdiction pursuant to 28 U.S.C. § 1332. Specifically, Smith asserts that there is no diversity jurisdiction because Sherrer is a resident of Calhoun County, Alabama and has not been fraudulently joined in the action.[5] In addition, Smith points out that neither Gate nor Sherrer has joined in the removal, which would generally be required. *See Miles*, 928 F. Supp. at 1075. American Home counters that neither Gate nor Sherrer should be considered for purposes of removal, because both parties were fraudulently

---

[5]In its Notice of Removal, American Home assumes, based on the nature of Smith's allegations, that the amount in controversy requirement of $75,000 has been met. *See* Notice of Removal at 23. Smith does not address this point in her Motion to Remand, and the court will assume for purposes of this opinion that the amount in controversy requirement has been satisfied.

joined. *See Erkins v. American Bankers Ins. Co.*, 866 F. Supp. 1373, 1375 (N.D. Ala. 1994) (citing cases that have held that fraudulently joined parties need not join in notice of removal).

## I. Defendant Sherrer

American Home cites *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), for the proposition that this court should disregard Sherrer's citizenship for purposes of diversity because Sherrer was fraudulently joined. According to American Home, a plaintiff is fraudulently joined when there is no possibility that the plaintiff can establish any cause of action against the resident defendant. *Cabalceta v. Stand & Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989).[6] More specifically, American Home argues Smith's claims against Sherrer are barred by the Alabama Medical Liability Act's ("AMLA") two-year statute of limitations, *see* Ala. Code § 6-5-482, and thus Sherrer is fraudulently joined. *See, e.g., Whitlock v. Jackson Nat'l Ins. Co.*, 32 F. Supp. 2d 1286, 1290 (M.D. Ala. 1998) (holding that claims barred by a statute of limitations are fraudulently joined); *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1222 (S.D. Ala. 1998) (same).

The AMLA provides, in part, that "[a]ll actions against physicians . . . must be commenced within two years next after the act, or omission, or failure giving rise to the claim, and not afterwards." Ala. Code § 6-5-482. The Eleventh Circuit has held that this statute of limitations "begins to run when the first injury, however slight, occurs, even though that injury may later become greater or different." *Free v. Granger*, 887 F.2d 1552, 1555 (11th Cir. 1989).

Relying on the factual findings of Judge Bechtle as part of the multi-district litigation

---

[6]*Cabalceta* also found fraudulent joinder when a plaintiff has fraudulently pled jurisdictional facts. 883 F.2d at 1561. American Home cites *Cabalceta* for this proposition, but since it has not alleged such fraud, this prong of *Cabalceta* will not be addressed. American Home has later cited cases which purport to make the standard a "reasonable possibility."

4

("MDL"),[7] American Home argues that the injuries caused by Pondimin and Adipex occur when the drugs are first ingested into the system, even if there is no outward physical manifestation of injury.[8] Thus, since Smith's last prescription was filled in February 2000, and her suit was not filed until May 8, 2002, American Home argues that any claim against Sherrer is barred by the statute of limitations.

Smith counters that "Alabama law has long required a manifest, present injury before a plaintiff can recover in tort." *Hinton v. Monsanto Co.*, 813 So. 2d 827, 829 (Ala. 2001). She goes on to note that Judge Bechtle, as part of the MDL litigation, found that patients are often asymptomatic at first and only begin to show outward symptoms once the heart begins to fail. Smith thus seems to argue, contrary to American Home's position, that injury to her heart, without outward physical manifestations of injury, is not a "manifest, present injury" sufficient to trigger the two-year statute of limitations.

American Home also argues that Smith does not qualify for the "safe harbor" provision found in the AMLA. While the usual statute of limitations for actions under the AMLA is two years, the Act further provides that

> [I]f the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier.

---

[7] Judge Bechtle presides over the multi-district litigation, *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, which is currently pending before the United States District Court for the Eastern District of Pennsylvania. Smith was part of the plaintiff class for *In re Diet Drugs* prior to opting-out.

[8] American Home further argues that since Smith was still part of the plaintiff class when those findings were made, she is bound by them. See Notice of Removal at 5.

5

Ala. Code § 6-5-482. American Home argues that Smith was, or at least reasonably should have been, aware of the potential health risks associated with taking Pondimin and Adipex more than six months prior to filing the present suit. To support this claim, American Home cites the extensive national and local media coverage and publicity surrounding the recall of Pondimin and Adipex in the Fall of 1997. American Home further cites the extensive national and local media coverage, both print and broadcast, of the health problems associated with these drugs, also starting in the Fall of 1997. American Home notes that most of these media stories advised people who have taken Pondimin and Adipex to consult their doctors, even if they feel perfectly healthy. American Home also places special emphasis on a November 1997 warning published by the United States Department of Health and Human Services, in which people were advised to see their doctor if they had taken Pondimin or Adipex.

American Home also argues that the litigation surrounding Pondimin and Adipex should have given Smith notice of her health problems. American Home cites the publicity surrounding the first jury verdict involving these drugs, over $23 million to a woman in Van Zandt County, Texas, awarded in August 1999. It also cites the nationwide media attention given to the class action settlement approved by Judge Bechtle as part of the MDL, specifically citing the extensive measures taken to ensure that any potential class members received notice of the settlement. These notices were given throughout 1999 and early 2000, and Judge Bechtle described them as highly successful. American Home also refers to Smith's deposition taken on August 27, 2002, and, more particularly, the evidence related to her diagnosis by Dr. Kamran by at least September 2001.

In sum, American Home argues that Smith was on inquiry notice of her potential health

problems as early as 1997, and no later than September 2001. Since American Home argues that these drugs do not cause latent health problems, it contends that Smith would have discovered her injuries if she had gone to the doctor. Since her suit was filed in May 2002, American Home argues that Smith does meet the standard two-year limitations period or the six-month safe harbor.[9]

Smith counters that the Eleventh Circuit has strictly construed claims of fraudulent joinder. Specifically, Smith points out that "[t]he burden of establishing fraudulent joinder is a heavy one. Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). Thus, Smith contends that remand is required when "there is even a possibility that a State Court would find that the complaint states a cause of action against any one of the resident defendants." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).

Smith argues that any evidence about national publicity and coverage surrounding these drugs is insufficient to show what *she* knew or reasonably could have discovered. Smith points out that there is no proof that any of these messages reached her specifically, or, that if they did, she should have been put on notice of her problems. She also notes that American Home and other drug manufacturers have consistently and publically denied that these drugs cause any health problems or that users need to have an echocardiogram. In essence, Smith asserts that while the actual damage to heart may not have been latent, a point that she does not concede, her *knowledge* of any health problems *was* latent, i.e., she did not know that there was damage until she had the echocardiogram. "The Alabama Supreme Court has held that 'the question of when

---

[9]American Home bases this argument on the premise that the alleged injuries began immediately when the drugs were taken and were discovered at least by September 2001, more than six months before May 2002.

7

a cause of action was or should have been discovered is a question of fact for the jury.'" *Barton v. American Red Cross*, 804 F. Supp. 1455, 1461 (M.D. Ala. 1992) (quoting *Herring v. Shirah*, 542 So. 2d 271, 274 (Ala. 1988)). In light of this standard, Smith argues that she has presented a question of fact for the jury as to when she should have known about her injuries. Thus, she argues that she has presented a colorable claim against Sherrer, and that the case should be remanded.

## CONCLUSIONS OF THE COURT

Although the underlying claim(s) present substantive issue(s) and the statute of limitations issue as to Sherrer is primarily procedural, the specialized nature of the claim(s) call for a uniform application by the MDL. This is true as to the Sherrer issue and the Gate issue. The MDL is better able to determine particularly the Gate issue and the Sherrer time of injuries issue. It is also likely better able to uniformly decide the Sherrer discovery of cause of action issue.

The court will stay ruling on the Motion to Remand until the MDL reaches whatever decisions it may.

This _17th_ day of September 2002.

/s/ Robert B. Propst
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

8